UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**J. MONROE JOHNSON, *et al.*,**
    Plaintiffs,

**v.**

**MARSHALL COUNTY ALABAMA, *et al.*,**
    Defendants.

Case No. 4:25-cv-8-CLM

## MEMORANDUM OPINION

Since 2021, J. Monroe Johnson and Eujena R. Collings (collectively "Johnson") have repeatedly sued Marshall County, Alabama; the City of Albertville, Alabama; city, county, and state officials associated with Albertville and Marshall County; and citizens and businesses of Albertville and Marshall County. The court is aware of these past suits:

### *State Cases*

- *Eujena R. Collings, et. al, v. Marshall County, Ala.*, Marshall County Circuit Case No. 50-CV-2021-900082;
- *J. Monroe Johnson, et. al, v. Jon Alan Smith*, Marshall County Circuit Case No. 50-CV-2021-900083;
- *J. Monroe Johnson, et. al, v. Jon Alan Smith*, Marshall County Circuit Case No. 50-CV-2021-900110;
- *J. Monroe Johnson, et. al, v. Lake Guntersville State Park*, Marshall County Circuit Case No. 50-CV-2021-900124;
- *J. Monroe Johnson, et. al, v. Walmart Stores, Inc.*, Marshall County Circuit Case No. 50-CV-2021-900136;

### *Federal Cases*

- *J. Monroe Johnson, et. al, v. Marshall County, Ala.*, ALND Case No. 4:21-CV-519;
- *Eujena R. Collings, et. al, v. Marshall County, Ala.*, ALND Case No. 4:23-CV-349.

In this case—Johnson's third in this court—Johnson sues more than 20 cities, counties, judges, police officers, attorneys, and other state officials. (Doc. 14). In less than six months, Johnson has filed more than 200 documents, more than 100 attachments, and more than 50 motions. Some of the pending motions include:

- Motion to Dismantle Criminal Regime, Alabama;
- Motion to Indict Tracy Honea for Inciting a Mob against Eujena;
- Motion for Help, any True Help, regarding the Deadly Deliberate Wicked Sabotage Damage Unconstitutionally Inflicted against Eujena;
- Motion to Stay the Revenge Scheme against Eujena;
- Motion to Charge Elder-abusing Defendants;
- Motion for Ultimate Capitulation; and,
- Motion to Mediate Immediately/Rapidly (short & long versions).

(Docs. 85, 91, 97, 136, 157, 235, 236, 237).

Also pending are Defendants' Rule 12 motions to dismiss.[1] (Docs. 26, 62, 102, 128, 174, 232). For the reasons explained below, the court **GRANTS** Defendants' motions and **DISMISSES** this case.

## BACKGROUND

The court ordered Defendants to respond to Johnson's amended complaint (doc. 14), which Johnson revised during briefing to correct spelling (doc. 40). *See* (Doc. 17). Because there is little difference between the two documents, the court focuses on Johnson's revised amended complaint (doc. 40). Because Defendants seek dismissal under Rule 12, the court considers the facts pleaded by Johnson to be true. *See Butler v. Sheriff of Palm Beach County*, 685 F.3d 1261, 1265 (11th Cir. 2012).

---

[1] The only Defendant not to file a Rule 12 motion is Mason Colegrove. While Colegrove is listed as a defendant, *(see* doc. 14, p. 18), Johnson does not make any factual allegations against Colegrove in the amended complaint. So there is no pending claim against Colegrove for the court to dismiss.

### A. The Monroe Compound

Eujena Collings is J. Monroe Johnson's 85-year-old mother. "Brother" Roger Coit Chappell was a friend, mentor, and business associate of Collings and Johnson who lived with them. In later fillings, Johnson calls the group the "Lynyrd Skynyrd family."

Eujena owns two acres along Highway 431 in Albertville, Alabama, that contains a gated and walled space known as the "Monroe Compound." Besides the family's living quarters, the Monroe Compound contains businesses that generate revenue for Eujena. Johnson estimates the Compound property is worth $10 million ($5 million per acre).

Johnson bases his valuation on the significant commercial growth of nearby properties along Highway 431. Johnson says that a billion-dollar retail center including a Super Target is in development across the highway from the Monroe Compound, and that Albertville's mayor, Tracy Honea, wants to take Eujena's property so that he can develop her land too. That's where the other defendants fit in.

Johnson alleges that, starting in 2011, Defendants, who Johnson collectively calls the "Alabama KKK Kleptocracy," have engaged in a decade-long mission to harass the family and take Eujena's property, resulting in Eujena's financial ruin, Johnson's PTSD, and Brother Chappell's death. Here are some of the events Johnson pleads:

- Local bank employees, local judges, and the district attorney (now state attorney general) effectively gave away $40,000 of Eujena's money that was stolen via checkbook theft;
- The mayor conspired with the City attorney and local bankers to sabotage a $150,000 loan approved for Eujena;
- Marshall County Sheriff Phil Sims lied that Eujena failed to cooperate with his investigation of a $300,000 theft of vehicles at the compound so that he could dismiss Eujena's complaint;
- State judges ultimately dismissed Eujena's case against persons who stole $300,000 of vehicles from the Compound;

- State judges refused to evict delinquent tenants from Eujena's rental apartments, thus costing her money;
- The mayor sabotaged Eujena's property appraisal, then sent a local realtor to buy the property at a low-ball price;
- A local physician sexually assaulted Johnson, giving him PTSD that hinders Johnson's ability to help Eujena;
- A state prison guard masqueraded as a state trooper so that he could plant a gun and drugs on Johnson, then arrest him;
- Other law enforcement agents tried to plant narcotics in Johnson's vehicle to falsely arrest him;
- Officials have wrongly accused the family of selling drugs and raping children inside the Compound to create an excuse for seizing the property; and,
- Sheriff Sims told the owner of King Tire, a tenant on Eujena's Compound property, that he would use "100 lawmen . . . to clear the Monroe Compound," thus cutting off one of Eujena's revenue sources.

(Doc. 40, p. 25). On the last point, Sheriff Sims told King Tire's owner that the raid would happen on January 4, 2025. (*Id.*). So Johnson filed this lawsuit on January 3, 2025—*i.e.*, the day before the alleged raid. (Doc. 1).

Johnson does not plead that Sheriff Sims raided the Compound. Nor does Johnson plead that anyone seized or foreclosed the property. Nor does Johnson plead that he and Eujena left the Monroe Compound. To the contrary, in his most recent filing (May 29, 2025), Johnson pleads that he and his mother still live at the Monroe Compound. *See* (Doc. 236, p. 24). So the court must assume when ruling on the pending Rule 12 motions that Defendants *want* to take Eujena's property but have yet to do so.

### B. This lawsuit

Johnson sued 12 defendants on January 3, 2025. (Doc. 1). Johnson used the District's standard "Complaint for Violation of Civil Rights" form. Johnson cited the Fourteenth Amendment alone as the basis of his claim, and for relief, he asked the court to:

4

- Nullify a coerced land sale agreement;
- Suspend Eujena's mortgage payments on the Compound property pending resolution of this case;
- Enter judgment for $50 million.

(Doc. 1, p. 6). After several defendants moved to dismiss Johnson's first complaint, Johnson amended it. (Doc. 14). The court then ordered that Johnson not file another amended complaint until all Defendants responded to his amended complaint and the court ruled on any Rule 12 motions. (Doc. 17). Other than filing a version that corrected some spelling errors (doc. 40), Johnson did not file another complaint. That means the revised amended complaint (doc. 40) is operative and the original complaint (doc. 1) is void. So the court must now rule on Defendants' pending motions to dismiss that complaint.

### C. Previous lawsuits

Before it does, though, the court reiterates that this is not Johnson's first federal lawsuit about most of these events.

1. *Case No. 21-cv-519 (Axon, J.)*: Johnson first sued many of these defendants in 2021, alleging many of the same facts recounted here. When the defendants moved to dismiss, the court (Judge Axon) allowed Johnson to orally argue why his case should proceed. The court then dismissed most of Johnson's claims as barred by the two-year statute of limitations. (Doc. 47, p. 10). The court dismissed the remaining claims for failure to plead a viable claim. (*Id.*, p. 15).

2. *Case No. 23-cv-349 (Maze, J.)*: Collings then sued many of the same defendants about the same facts. For example, like Johnson, Collings complained that Sheriff Sims failed to evict the non-paying apartment tenants and that city officials mishandled the reported theft of $300,000 worth of vehicles from the Monroe Compound. (Doc. 41, p.3). The court dismissed that complaint *without* prejudice for several reasons, including failure to comply with the Federal Rules' pleading requirements. The court gave Johnson and Collings detailed instructions

5

on how to properly plead a claim and serve defendants, *see* (*id.*, pp. 11-12), and gave them time to amend their complaint. The court dismissed the case with prejudice when they failed to timely amend. (Doc. 50).

## STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

## DISCUSSION

The court ended the Background with a discussion of Johnson's past cases because the court must dismiss the operative complaint here for the same reasons it has dismissed Johnson's previous complaints.

### A. Statute of Limitations / Claim Preclusion

The court dismissed most of Johnson's claims in the first case because Johnson's claims were based on facts that he knew or should have known more than two years before he filed his complaint. *See* Case No. 21-cv-519 (doc. 47, p. 8-9), *citing McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). Among the time-barred claims were those related to (a) the failure to prosecute the $40,000 theft of Eujena's checkbook, (b) the false arrests of Johnson, and (c) the failure to evict tenants who failed to pay Eujena rent.

To the extent that Johnson repleads the same facts to support claims of a constitutional violation, Johnson's claims are barred by claim preclusion / res judicata. Further, Johnson's previous argument that the court should not apply the two-year limitation because defendants' actions

6

are on-going is barred by issue preclusion / collateral estoppel because the court previously rejected this argument and Johnson did not appeal.

To the extent that Johnson pleads different facts that predate January 3, 2023—*i.e.*, two years before he filed this lawsuit—any claim based on those facts is barred by the same statute of limitations the court applied in the 2021 case. *See McNair, supra.*

The court therefore **DISMISSES** all claims against all Defendants that stem from events that predate January 3, 2023. Because Johnson cannot amend his complaint to circumvent the two-year statute of limitation and claim preclusion, this dismissal is with prejudice.

### B. Failure to state a claim: Oneonta police

The court started with the two-year statute of limitation because Johnson pleads only two events in the operative complaint with dates within the limitation period—*i.e.*, after January 3, 2023:

- Sometime after July 18, 2024, at the behest of a nursing home administrator, unnamed Oneonta police officers threatened to arrest Johnson for criminal trespass and to plant narcotics in his car when Johnson drove to Oneonta to pick up Charles Barksdale; and,
- On December 17, 2024, Marshall County Sheriff Phil Sims told the owner of King's Tire that he would raid the Monroe Compound with 100 lawmen on January 4, 2025.

(Doc. 40, pp. 8, 31-32). That means Johnson fails to plead a timely claim against any named Defendant except Sheriff Sims. So for the reasons detailed in Part A, all claims against all Defendants except Sheriff Sims are due to be **DISMISSED WITH PREJUDICE.**

The court is thus left with two pleaded facts that could lead to a timely claim. The court takes them in chronological order.

Again, Johnson pleads (through an alleged affidavit of Charles Barksdale) that unnamed Oneonta police officers threatened to arrest him

7

for criminal trespass and to plant narcotics in his car when Johnson drove to Oneonta to pick up Charles Barksdale. Not only does Johnson fail to tie this allegation to a named defendant, he fails to attach it to a claim—a common theme in his complaint. Johnson pleads *no* claims in his operative complaint; he instead pleads 43 pages of facts, accusations, stats about Alabama's prison system, and pictures—most of which depict lynchings, the Klan, and Civil War generals. Here, for example, are screen shots of the complaint's cover and three pages from its body:



8



(Doc. 40, pp. 1, 17, 26, 30) (redactions added to hide personal identifying information). The court includes these pages for two reasons: (1) to show that the court goes out of its way to read Johnson's writing as a complaint despite Johnson not following the rules that govern how to plead a complaint and (2) to show on the last of the four pages that include the facts about the Oneonta police—indeed most of the facts recounted in this opinion—fall within a purported "affidavit" of Charles Barksdale, not within a statement of facts.

Relevant here, Johnson fails to plead the names of the officers and fails to plead a claim—*i.e.*, a violation of a specific federal law—against them. So while Johnson pleads timely facts, there is no claim to dismiss. If Johnson wishes to sue these officers for violating his federal rights, he may file another lawsuit that names them as defendants, pleads a violation of federal law, and satisfies the Rules of Civil Procedure.

9

### C. Sheriff Sims

The other timely allegation is that Sheriff Sims told the owner of King's Tire that he "would bring 100 lawmen to clear the Monroe Compound [address omitted] on Saturday, January 4, 2025[.]" (Doc. 40, p. 8). Sheriff Sims argues that the court should dismiss any claim stemming from this allegation for four reasons: (a) Johnson fails to satisfy the Rules' pleading requirements; (b) Johnson's allegation fails to plead a ripe claim because Sheriff Sims never raided the Monroe Compound; (c) Johnson failed to properly serve him; and, (d) Sheriff Sims is immune from any claim. (Doc. 26). The court will decide Sheriff Sims' immunity-related arguments first.

1. *Sovereign immunity*: The Eleventh Amendment bars suits against States and their officials without their consent. Alabama's Constitution does not waive that immunity: "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. Because sheriffs are state executive officers in Alabama, *see* Ala. Const. Art. V, § 112, the Eleventh Circuit has held that "Alabama sheriffs . . . are absolutely immune from suit as an officer of the state under the Eleventh Amendment." *Melton v. Abston*, 841 F.3d 1207, 1234 (11th Cir. 2016). Based on this precedent, the court finds that Sheriff Sims is absolutely immune from being sued in his official capacity and any claim against him in that capacity must therefore be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. Because Johnson cannot amend his complaint to overcome Sheriff Sims' absolute immunity from suit in his official capacity, the court will not allow Johnson to replead the official capacity claims against Sheriff Sims.

2. *Qualified immunity*: But "Alabama officials who have sovereign immunity when sued in their official capacities are not entitled to sovereign immunity when they are sued in their <u>individual</u> capacities under Section 1983." *Id.* at 1234. "[N]or are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). So to

the extent that Johnson sues Sheriff Sims in his individual capacity, those claims aren't barred by the Eleventh Amendment.

Qualified immunity, however, protects government officials from being sued in their individual capacities so long as "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). So to overcome Sheriff Sims' qualified immunity defense, Johnson had to plead facts that would prove that the Sheriff's conduct violated clearly established law. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).

Johnson fails to plead what clearly established law Sheriff Sims violated when he spoke to the King's Tire owner. Again, Johnson does not plead that the Sheriff or anyone else *actually* raided the Monroe Compound or that Sheriff Sims told Johnson or his mother personally that he or his deputies would raid the Compound. So Johnson fails to plead facts that would defeat Sheriff Sims' invocation of qualified immunity, *see* (doc. 26, pp. 10-13), if Johnson has pleaded a claim against Sheriff Sims in his individual capacity. As Johnson was already afforded an opportunity to amend his complaint and has failed to explain how Sheriff Sims' actions violate his constitutional rights, the court will dismiss any individual capacity claims against Sheriff Sims with prejudice.

—

The court could dismiss Johnson's complaint for other reasons, such as improper service, shotgun pleading, and filing a complaint and associated pleadings that heckle opposing parties rather than redress legitimate federal claims. *See Davis v. Kvalheim*, 261 Fed. Appx. 231, 235 (11th Cir. 2008) (discussing frivolity under 28 U.S.C. § 1915).[2] But the

---

[2] The court has the inherent authority to dismiss a patently frivolous complaint even though the plaintiff has paid the filing fee as Johnson has. *See Cuyler v. Aurora Loan Servs., LLC*, 2012 WL 10488184, at *2 (11th Cir. Dec. 3, 2012). The court may also dismiss based on this inherent authority even if some defendants have yet to appear. *See Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).

court needn't dive deeper into these issues because the court has already explained that (a) Johnson fails to plead any timely, viable claims and (b) further amendments against the named defendants would be futile.

## CONCLUSION

For these reasons, the court **GRANTS** all pending motions to dismiss. *See* (Docs. 26, 62, 102, 128, 174, 232). The court dismisses all claims against all defendants.

Because there are no pending claims, the court **DENIES AS MOOT** all other pending motions. *See* (Docs. 84, 85, 88, 89, 91, 97, 127, 134, 136, 137, 138, 139, 142, 143, 144, 147, 148, 155-169, 171, 172, 173, 175, 176, 179, 181, 183, 184, 188, 189, 190, 191, 193, 195, 198-213, 215-219, 221, 222, 224, 230, 231, 235, 236, 237, 238).

The court will enter an order consistent with this opinion.

The court **DIRECTS** the Clerk of Court to (a) send a copy of this opinion to Johnson and Collings at their addresses of record and (b) close this case.

**Done** and **Ordered** on June 2, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE